**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | Nos. 18-30106 |
| | 18-30114 |
| *Plaintiff-Appellee,* | 20-30110 |
| v. | D.C. Nos. |
| | 2:16-cr-00007-RSM |
| LONNIE EUGENE LILLARD, | 2:16-cr-00007-RSM-1 |
| | 2:15-cr-00270-RSM-1 |
| *Defendant-Appellant.* | |
| | OPINION |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, Chief District Judge, Presiding

Argued and Submitted June 9, 2022
Portland, Oregon

Filed January 17, 2023

Before: Mary M. Schroeder and Jennifer Sung, Circuit
Judges, and John Antoon II,[*] District Judge.

Opinion by Judge Sung

---

[*] The Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

# SUMMARY[**]

## Criminal Law

In Lonnie Eugene Lillard's appeals arising from (1) a case in which Lillard pleaded guilty to conspiracy to commit bank fraud and (2) a case in which the district court revoked the supervised release that Lillard was serving for a prior federal conviction, the panel affirmed the district court in part, vacated the sentence imposed for the violation of supervised release, and remanded for re-sentencing on the supervised release violation.

Lillard was serving a sentence of supervised release for a 2006 federal conviction from Nevada when he was arrested and indicted on the conspiracy count. Soon after Lillard's arrest, the government obtained an order permitting it to seize the funds in his inmate trust account and apply them to a restitution obligation for a 1998 federal conviction from Washington. Lillard pleaded guilty in the conspiracy case, admitted a violation of supervised release in the Nevada case, and was sentenced in both cases.

Lillard claimed that the government's seizure of his inmate funds pursuant to the restitution order from his 1998 conviction violated (1) his Sixth Amendment right to counsel of choice by preventing him from hiring a lawyer, and (2) his Fifth Amendment due process right to a court-appointed expert and investigative assistance.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the government does not violate a defendant's Sixth Amendment right to counsel of choice when it seizes untainted funds pursuant to a valid restitution order and judgment from a prior case. The panel explained that under 18 U.S.C. § 3613(c), the restitution order issued pursuant to the Mandatory Victims Restitution Act gave the government a lien "on all property and rights to property of the person" against whom judgment is entered until the liability is satisfied or otherwise terminated, and the fact that Lillard's funds were untainted did not diminish the strength of the government's property interest. Because the restitution order and the § 3613(c) lien gave the government a substantial property interest in the funds in Lillard's inmate account, the government's seizure of those funds to satisfy Lillard's restitution obligation did not violate his Sixth Amendment right to counsel of choice.

The panel held that Lillard did not establish that the seizure of funds violated his Fifth Amendment due process rights, where Lillard did not demonstrate either that he needed the right to court-appointed expert and investigative assistance, or that he requested but was denied the appointment of any assistance.

It was undisputed on appeal that the 36-month sentence the district court imposed for Lillard's supervised release violation is illegal because it exceeds the applicable statutory maximum. It was also undisputed that Lillard did not object to the illegal sentence in the district court and that, consequently, this court reviews for plain error. The government conceded that the imposition of an illegal sentence was an error that was plain, but contended that the error did not affect Lillard's substantial rights because his 36-month illegal sentence is shorter than and concurrent with his 196-month valid sentence in the conspiracy case. The

panel held that an illegally excessive sentence violates a defendant's substantial rights even if it runs concurrent with an equal or longer, valid sentence.  In so holding, the panel noted the possibility of collateral consequences.  The panel also concluded that the illegally excessive sentence affects the fairness, integrity, or public reputation of judicial proceedings.  The panel therefore vacated the 36-month sentence imposed for the violation of supervised release and remanded for re-sentencing in that case.

The panel addressed and rejected Lillard's other arguments in a concurrently filed memorandum disposition.

**COUNSEL**

Carlton F. Gunn (argued), Law Office of Carlton F. Gunn, Pasadena, California, for Defendant-Appellant.

Michael S. Morgan (argued), Rebecca Shapiro Cohen, and Michelle Jensen, Assistant United States Attorneys; Erin Becker; Teal Luthy Miller; Charlene Koski; Tessa M. Gorman, Acting United States Attorney; Office of the United States Attorney, Seattle, Washington; for Plaintiff-Appellee.

# OPINION

SUNG, Circuit Judge:

Defendant-Appellant Lonnie Eugene Lillard was serving a sentence of supervised release for a prior federal conviction from Nevada when he was arrested and indicted on one count of Conspiracy to Commit Bank Fraud, 18 U.S.C. §§ 1344(2), 1349. Soon after Lillard's arrest, the government obtained an order permitting it to seize the funds in his inmate trust account and apply them to a restitution obligation for a prior federal conviction from Washington. Lillard pleaded guilty in the conspiracy case, admitted a violation of his supervised release in his Nevada case, and was sentenced in both cases.

Lillard urges that the seizure of his inmate funds violated his Sixth Amendment right to counsel of choice and his Fifth Amendment due process right. He also contends that the district court's imposition of an undisputedly illegal sentence for his supervised release violation is reversible error. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We conclude that the government's seizure of Lillard's inmate funds did not violate his right to either counsel of choice or due process. We also conclude that the district court's imposition of an illegally excessive sentence for Lillard's supervised release violation was plain error that requires vacatur of that sentence and remand for re-sentencing.[1]

---

[1] We address and reject Lillard's other arguments in a concurrently filed memorandum disposition, *United States v. Lillard*, No. 18-30106, --- F. App'x ---- (9th Cir. 2022).

**FACTS AND PROCEDURAL BACKGROUND**

In 2016, Lillard was arrested and indicted in the Western District of Washington for conspiracy to commit bank fraud. At the time of his arrest, Lillard was serving a term of supervised release for a 2006 conviction in the District of Nevada. He also had an outstanding restitution obligation of more than $79,000 from a 1998 conviction in the Western District of Washington.[2] Soon after his arrest, the government encumbered his inmate trust account, which contained about $6,500. The government then moved for, and obtained over Lillard's objection, an order directing that those funds be applied towards his restitution obligation.

Lillard pleaded guilty to the conspiracy charge without a plea agreement. At that time, he also admitted having violated the terms of his supervised release in his District of Nevada case. The district court sentenced Lillard to 196 months of incarceration, to be followed by 5 years of supervised release, in the conspiracy case. The court also sentenced Lillard to 36 months of incarceration for the supervised release violation, to run concurrent with the sentence in the conspiracy case.

## DISCUSSION

### I. Seizure of Funds

Lillard claims that the government's seizure of his inmate funds pursuant to the restitution order from his 1998 conviction violated his constitutional rights in the present case, in two ways: First, he claims the seizure violated his Sixth Amendment right to counsel of choice by preventing

---

[2] Lillard's unopposed motion to take judicial notice of documents in this case and related cases (Docket Entry 69) is granted.

him from hiring a lawyer. Second, he claims the seizure violated his Fifth Amendment due process right to a court-appointed expert and investigative assistance. We address each claim in turn.[3]

### A. Sixth Amendment

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." That guarantee includes, among other things, the right to "be represented by an otherwise qualified attorney whom the defendant can afford to hire, or who is willing to represent the defendant even though he is without funds," which we commonly refer to as the right to counsel of choice.[4] *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989).

In this case, the government seized Lillard's inmate funds to satisfy his post-conviction restitution obligation

---

[3] The government contends these claims are unreviewable because Lillard waived them twice over—through an unconditional guilty plea, and by intentionally withholding them from the district court. *See United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (explaining that waived rights are unreviewable). Lillard contends that the claims at issue survive a guilty plea, and that he preserved the issues by opposing the government's motion to seize the funds. We do not decide whether Lillard waived these claims, because even assuming he preserved them, he does not prevail on the merits.

[4] The government contends that, under *United States v. Stites*, 56 F.3d 1020, 1024 (9th Cir. 1995), Lillard is required to identify a private lawyer who was willing to represent him and to prove that the seizure of his inmate funds prevented him from hiring that lawyer. The government further urges that Lillard has failed to make that showing. Lillard disputes the government's reading of *Stites*. Because the success of Lillard's counsel-of-choice claim does not turn on this issue, we need not decide it and decline to do so.

from a prior case in which judgment had been entered. Lillard does not dispute the validity of the restitution order or the judgment in the prior case. Rather, citing *Luis v. United States*, 578 U.S. 5 (2016), Lillard contends that the seizure of funds violated his Sixth Amendment right to counsel of choice because the funds were "untainted," meaning that the funds were not traceable to his alleged crime.

In *Luis*, the Court held that the pretrial restraint of the defendant's untainted assets violated her Sixth Amendment right, but there, the pretrial restraint order had not been issued pursuant to a valid, existing restitution order. 578 U.S. at 23. Thus, *Luis* did not decide the issue presented here: whether the government violates a defendant's Sixth Amendment right to counsel of choice when it seizes untainted funds pursuant to a valid restitution order and judgment from a prior case. We hold that it does not.

The Court's discussion of the scope of the Sixth Amendment right to counsel in *Caplin & Drysdale* establishes the applicable principles. On the one hand, the Sixth Amendment guarantees a defendant in a criminal case "the right to be represented by an otherwise qualified attorney whom [they] can afford to hire." 491 U.S. at 624. On the other hand, a defendant has no constitutional right to representation by a particular attorney whom they cannot afford to hire. *Id.* Further, "[a] defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way" that the defendant will be able to retain the attorney of their choice. *Id.* at 626.

Applying those principles, the Court concluded in *Caplin & Drysdale* that the Sixth Amendment did not give

the defendant the right to use forfeitable assets to pay counsel because, by operation of the forfeiture statute, 21 U.S.C. § 853, those assets belonged to the government, not the defendant, even though they remained in the defendant's possession. *Id.* at 627, 632. In so holding, the Court rejected the argument that the defendant's interest in the forfeitable assets outweighed the government's. *Id.* at 629. Because the forfeiture statute authorized the government to use forfeitable assets to fund law enforcement activities and return property to crime victims, the government had a "strong . . . interest in obtaining full recovery of all forfeitable assets" that outweighed "any Sixth Amendment interest" in permitting defendants "to use assets adjudged forfeitable to pay for their defense." *Id.* at 631.

In *United States v. Monsanto*, 491 U.S. 600 (1989), a case decided the same day as *Caplin & Drysdale*, the issue was whether the government could freeze a defendant's assets before he is convicted and before the assets are finally adjudged to be forfeitable, as authorized by 21 U.S.C. § 853. The Court acknowledged that such pre-trial freezing of assets "raises distinct constitutional concerns." 491 U.S. at 615. But, applying the principles set forth in *Caplin & Drysdale*, the Court concluded that the Sixth Amendment does not bar the government from freezing assets in a defendant's possession before trial if there has been a finding of probable cause to believe that the assets are forfeitable under the statute. *Id.* at 615–17.

Thus, we must first determine whether the government had a property right in the seized funds, even though they were in Lillard's inmate account. As noted above, Lillard acknowledges that the government seized those funds to satisfy the valid restitution order from Lillard's 1998 case—

after Lillard was convicted and judgment had been entered against him. That restitution order was issued pursuant to the Mandatory Victims Restitution Act. *See* 18 U.S.C. § 3663A. Under 18 U.S.C. § 3613(c), such a restitution order gives the government a lien "on all property and rights to property of the person" against whom judgment is entered until the liability is satisfied or otherwise terminated.

Because of the restitution order and § 3613(c) lien, the government's property interest in Lillard's funds was comparable to the government's property interest in the forfeitable assets considered in *Caplin & Drysdale*. *See Luis*, 578 U.S. at 16 (noting that application of § 853(c)'s relation-back provision made the government in *Caplin & Drysdale* "something like a secured creditor with a lien on the defendant's tainted assets superior to that of most any other party"). Because the seized funds effectively belonged to the government, Lillard did not have a Sixth Amendment right to use those funds to retain an attorney.[5] *See Caplin & Drysdale*, 491 U.S. at 631–32.

Lillard argues, however, that the holdings of *Caplin & Drysdale* and *Monsanto* are limited to "tainted" funds, meaning funds obtained as a result of, or traceable to, a crime. Lillard further contends that under *Luis*, the Sixth Amendment bars the government from seizing *untainted* funds when doing so prevents the defendant from retaining their counsel of choice. We disagree.

---

[5] In 2019, we held that the government's seizure of Lillard's funds was unlawful because the restitution statute authorizing seizure, 18 U.S.C. § 3664(n), did not apply to periods of pretrial detention. *United States v. Lillard*, 935 F.3d 827, 836 (9th Cir. 2019). Our earlier holding does not affect the status of the underlying restitution order or the government's lien pursuant to 18 U.S.C. § 3613(c).

The dispositive distinction between *Luis* on the one hand and *Caplin & Drysdale* and *Monsanto* on the other was not whether the assets were tainted, but instead whether the government had a substantial property interest in the assets. In *Caplin & Drysdale* and *Monsanto*, the tainted nature of the assets was relevant only because the government's property interest flowed from the forfeiture statute's relation-back provision, which applied only to tainted assets. *Caplin & Drysdale*, 491 U.S. at 627; *Monsanto*, 491 U.S. at 615−16.

In *Luis*, the government sought and obtained an order that froze the defendant's assets before trial pursuant to a different statute: 18 U.S.C. § 1345(a)(2). 578 U.S. at 9. That statute authorized the court to freeze before trial both property obtained as a result of, or traceable to, the crime (tainted assets) and property of equivalent value (untainted assets). *Id.* at 8−9. In Luis's case, the pretrial order froze property in the latter category, "namely, property that [was] untainted by the crime, and that belong[ed] fully to the defendant." *Id.* at 9. Unlike the forfeiture statute, § 1345 did not give the government a property right in Luis's untainted assets. *See id.* at 13. Because the government had no property right in Luis's untainted assets—rather, they "belonged to the defendant, pure and simple," *id.* at 12— Luis had a Sixth Amendment right to use those assets to retain her counsel of choice under the principles set forth in *Caplin & Drysdale*. As the *Luis* plurality explained, the material distinction between the assets in *Luis* and those in *Caplin & Drysdale* and *Monsanto* was "the difference

between what is yours and what is mine." **[6]** *Id.* at 16. In *Caplin & Drysdale* and *Monsanto*, although it could not be said "that the Government 'owned' the tainted property outright," because of the forfeiture statute's relation-back provision "the Government even before trial had a 'substantial' interest in the tainted property sufficient to justify the property's pretrial restraint." *Id.*

Here, Lillard's assets were untainted, but he had an existing—not merely potential—restitution obligation. Because of that restitution obligation, the government had a lien on Lillard's *untainted* funds. 18 U.S.C. § 3613(c). Thus, unlike in *Luis*, the fact that Lillard's funds were untainted did not diminish the strength of the government's property interest. Further, because the government had a substantial property interest in Lillard's untainted assets and seized them for the purpose of restitution, the seizure did not violate the Sixth Amendment, despite its impact on Lillard's ability to pay for counsel of his choice. *See Caplin & Drysdale*, 419 U.S. at 629–30 ("Where the Government pursues this restitutionary end, the Government's interest in forfeiture is virtually indistinguishable from its interest in returning to a bank the proceeds of a bank robbery; and a forfeiture-defendant's claim of right to use such assets to hire an attorney, instead of having them returned to their rightful owners, is no more persuasive than a bank robber's similar claim.").

Lillard also argues that the government property right established by a restitution order and § 3613(c) lien is

---

[6] Because there was "no rationale common to a majority of the Justices," only the result of *Luis* is binding. *United States v. Davis*, 825 F.3d 1014, 1016 (9th Cir. 2016) (en banc).

relatively weak, for two reasons. First, he notes that a § 3613(c) lien is not perfected without notice. *See* 18 U.S.C. § 3613(d). Second, he asserts that, because a district court has discretion to adjust the payment schedule specified in a restitution order upon notification of a material change in a defendant's economic circumstances under 18 U.S.C. § 3664(k), the court has the power to override a § 3613(c) lien.

Those asserted limits on the government's property right do not change our conclusion. The government's property right established by a § 3613(c) lien is substantially less contingent than the government's right to a defendant's forfeitable assets before conviction and judgment. The government is entitled to a § 3613(c) lien only after a conviction and entry of a restitution judgment against a defendant. And, while the district court has authority to modify a defendant's payment schedule under § 3664(k), it cannot override the Mandatory Victims Restitution Act's command that total restitution equal the value of damages to property or persons. *See* 18 U.S.C. § 3663A(b)(1) & (2).

In sum, because the existing restitution order and § 3613(c) lien gave the government a substantial property interest in the funds in Lillard's inmate account, the government's seizure of those funds to satisfy Lillard's restitution obligation did not violate Lillard's Sixth Amendment right to counsel of choice.

### B. Fifth Amendment

Lillard next claims that the government's seizure of his inmate funds violated his due process rights. The Due Process Clause of the Fifth Amendment guarantees the right to court-appointed expert and investigative assistance when the defendant shows that they need such assistance. *See, e.g.*, *Ake v. Oklahoma*, 470 U.S. 68, 82–83 (1985); *Williams v.*

*Stewart*, 441 F.3d 1030, 1053–54 (9th Cir. 2006). Lillard has not demonstrated either that he needed such assistance, or that he requested but was denied the appointment of any assistance. Therefore, Lillard has not established that the seizure of funds violated his due process rights.

## II. Illegal Sentence

Finally, Lillard contends the district court committed reversible error by imposing an illegally excessive sentence for his supervised release violation. For the reasons explained below, we conclude that the imposition of the illegally excessive sentence was plain error requiring vacatur and remand for re-sentencing.

The district court imposed a 196-month sentence of incarceration for Lillard's conspiracy conviction, to run concurrent with a 36-month sentence of incarceration for the supervised release violation in his District Court of Nevada case. In that District Court of Nevada case, the most serious offense of which Lillard was convicted was Class C felony wire fraud. *See* 18 U.S.C. §§ 1343, 3559(a)(3). His supervised release violation therefore carried a maximum penalty of 24 months' imprisonment. *See* 18 U.S.C. § 3583(e)(3). It is undisputed that the 36-month sentence the district court imposed is illegal because it exceeds the applicable statutory maximum. *See United States v. Grimaldo*, 993 F.3d 1077, 1083 (9th Cir. 2021).

It is also undisputed that Lillard did not object to the illegal sentence in the district court and that, consequently, we review for plain error. *Id.* at 1081. Under the plain error test, relief may be granted only when there was an error that was plain and both affected the defendant's substantial rights and seriously affected the fairness, integrity, or public

reputation of judicial proceedings. *United States v. Kirilyuk*, 29 F.4th 1128, 1140 (9th Cir. 2022).

The government concedes that the imposition of an illegal sentence was an error that was plain. *See Grimaldo*, 993 F.3d at 1084. But the government contends that the illegal sentence did not affect Lillard's substantial rights because his 36-month illegal sentence is shorter than and concurrent with his 196-month valid sentence in the conspiracy case. We disagree.

We join the First Circuit in holding that an illegally excessive sentence violates a defendant's substantial rights even if it runs concurrent with an equal or longer, valid sentence. As that court has recognized, "collateral consequences may arise as a result of an above-the-maximum sentence imposed on a particular count." *United States v. Almonte-Nuñez*, 771 F.3d 84, 92 (1st Cir. 2014). "The existence and extent of these collateral consequences are notoriously difficult to predict, but they have the potential to harm the defendant in a myriad of ways." *Id.* Indeed, we have noted elsewhere that "multiplicitous convictions and sentences affect [a defendant's] substantial rights because they have collateral consequences, including the possibility of an increased sentence under a recidivist statute for a future offense." *United States v. Zalapa*, 509 F.3d 1060, 1064–65 (9th Cir. 2007). As just one example, even sentences that run concurrently may sometimes be counted separately in determining a defendant's Criminal History Category under the Sentencing Guidelines. *See* U.S.S.G. § 4A1.2(a)(2). "Although neither we nor [Lillard] can identify a specific prejudice which may stem from his erroneous sentence, we are unwilling to place upon [him] the

risk that such a prejudice will manifest itself in the future." *United States v. Kincaid*, 898 F.2d 110, 112 (9th Cir. 1990).

The government's reliance on *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007), is misplaced. In *Mitchell*, we reviewed for plain error several robbery sentences that may have been imposed in violation of *United States v. Booker*, 543 U.S. 220 (2005). *Mitchell*, 502 F.3d at 996–97. We held that the imposition of the robbery sentences did not affect the defendant's substantial rights even if it violated the Sixth Amendment because those sentences were shorter than, and ran concurrent with, multiple life sentences. *Id.* In *Mitchell* and our other *Booker* cases, however, the error was that the district court sentenced the defendant without knowledge that the Sentencing Guidelines are only advisory. *See id.* at 997. In such cases, the erroneous sentence was not necessarily excessive, and the district court would have been permitted to impose the same sentence on remand. But the same is not true here, where the error is the imposition of a sentence that exceeds the statutory maximum and therefore must be shortened on remand.

We also conclude that the imposition of an illegally excessive sentence affects the fairness, integrity, or public reputation of judicial proceedings. As we have recognized in cases where an illegal sentence increases a defendant's period of incarceration, "it is a miscarriage of justice to give a person an illegal sentence." *United States v. Schopp*, 938 F.3d 1053, 1069 (9th Cir. 2019) (quoting *United States v. Ameline*, 409 F.3d 1073, 1081 (9th Cir. 2005)). The same is true where an illegal sentence runs concurrent with a valid one of equal or longer length. As the First Circuit has noted, "leaving intact a sentence that exceeds a congressionally mandated limit may sully the public's perception of the

fairness of the proceeding," and "[t]hat perception, in turn, may threaten respect for the courts and may impair their reputation." *Almonte-Nuñez*, 771 F.3d at 92. And because re-sentencing is a "simple" task, "a failure to exercise our discretion in order to allow a district court to correct an obvious sentencing error that satisfies the three prongs of the plain error test would in itself undermine the 'fairness, integrity, and public reputation of judicial proceedings.'" *United States v. Castillo-Casiano*, 198 F.3d 787, 792 (9th Cir. 1999); *see also Almonte-Nuñez*, 771 F.3d at 92 (recognizing that "correcting such an error will rarely tax judicial resources").

We are aware that the Eighth Circuit has held that the imposition of an illegal sentence that does not increase a defendant's term of imprisonment does not affect his substantial rights. *See United States v. Bossany*, 678 F.3d 603, 607 (8th Cir. 2012). Although the *Bossany* court recognized "that the mere presence of an excessive sentence in a defendant's record has the potential of causing prejudice," it also noted that it had held in other contexts that "an illegal sentence alone does not establish the prejudice necessary for plain error relief." *Id.* at 606–07. Specifically, the court cited two of its pre-*Booker* cases holding "that a defendant's substantial rights are not affected by sentences that exceed the maximum authorized by jury findings (and thus violate the Sixth Amendment), if the district court 'could have' imposed legal sentences on those counts and used consecutive sentences (rather than concurrent) to achieve the same 'total punishment' under U.S.S.G. § 5G1.2(d)." *Id.* at 607. The court believed those cases "require [defendants] to show that, absent the error, the court could not have imposed [the same] total punishment, which, of course, [they] cannot do" when an illegal sentence runs

concurrent with a valid sentence of equal or longer length. *Id.*

But, as we have explained elsewhere, pre-*Booker* cases have "limited applicability" in contexts like this one precisely because of U.S.S.G. § 5G1.2(d). *Kirilyuk*, 29 F.4th at 1140. In particular, before *Booker*, U.S.S.G. § 5G1.2(d) "would have required the district court to impose consecutive sentences to reach the total proper punishment under the Guidelines if it exceeded the statutory maximum on a single count." *Id.* at 1141. Under *Booker*, however, the Federal Sentencing Guidelines are no longer mandatory. 543 U.S. at 246. We are thus unpersuaded by the Eighth Circuit's reasoning.

We vacate the 36-month sentence imposed for Lillard's violation of supervised release and remand to the district court for re-sentencing in that case.

**AFFIRMED in part, VACATED in part, and REMANDED in part.**